IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAMERON TAYLOR BOYD, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LELAND DUDEK )<br>COMMISSIONER OF SOCIAL SECURITY, )<br>)<br>Defendant, ) | Civil Action No. 24-631 |

MEMORANDUM OPINION

**I.      INTRODUCTION**

Pending before the court is an appeal from the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying the claim of Cameron T. Boyd ("plaintiff") for disability insurance benefits ("DIB) under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 405(g), 1383(c)(3).   Plaintiff contends the Administrative Law Judge (the "ALJ") a) improperly rejected the opinion of plaintiff's longtime mental health provider and b) failed to consider the episodic nature of plaintiff's bipolar disorder, which resulted in the ALJ failing adequately to consider his bipolar disorder as an impairment in step two, and improperly finding him not entitled to benefits.   Plaintiff asserts that the ALJ's decision is not supported by substantial evidence and should be reversed.   It is plaintiff's contention that the case should be remanded for the ALJ to consider properly all the evidence of record, including the episodic nature of bipolar disorder and the recommendation made by his primary mental health provider for plaintiff to attend a partial in-patient psychiatric treatment program.   The Commissioner asserts that the ALJ's decision is supported by substantial evidence and the Commissioner's decision should be affirmed.

The parties filed cross-motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. The court will grant defendant's motion for summary judgment (ECF No. 14) and deny plaintiff's motion (ECF No. 11) for the reasons set out below.

## II.   PROCEDURAL HISTORY

Plaintiff filed a previous application for benefits from 2009 through 2010 which was denied with no appeals filed. (R. at 18.)

On May 24, 2022, plaintiff protectively filed the current Title II application for DIB beginning February 7, 2022, which is at issue before the court. (Id.)   The claim was initially denied on November 3, 2022, and again upon reconsideration on January 31, 2023. (Id.)   On March 22, 2023, plaintiff requested a hearing, which was conducted by telephone before the ALJ on November 27, 2023. (Id.)   Plaintiff agreed to appear by telephone and testified at the hearing. (Id.)   Plaintiff was represented by an attorney at the hearing. (Id.)   An impartial vocational expert ("VE") also testified at the hearing. (Id.)

In a decision dated January 8, 2024, the ALJ determined that plaintiff was not disabled within the meaning of the SSA under §§ 216(i) and 223(d) and was able to return to other relevant work. (R. at 29.)   Plaintiff timely requested a review of that determination and by letter dated February 28, 2024, the Appeals Council denied the request for review and the decision of the ALJ became the final decision of the Commissioner. (R. at 1-7.)   Plaintiff subsequently commenced the present action seeking judicial review.

## III.   PLAINTIFF'S BACKGROUND AND MEDICAL EVIDENCE

### A.   Plaintiff

Plaintiff was born on June 27, 1991, and was 32 years old at the time of the hearing before the ALJ. (R. at 40.) He graduated from high school and had some college education. (R. at 41.) Plaintiff has not been married, lives by himself, and is able to drive a car. (Id.) Plaintiff has held a variety of full and part-time jobs in the years since high school, but alleges he has been unable to work since he became disabled on or about February 7, 2022. (R. at 42.) Since that time, he alleges, because of the medications he has been on and the lack of motivation brought on from depression, his weight has gone from about 280 to 370 pounds. (R. at 41, 53.)

When plaintiff first began working as an adult, he worked various part-time and full-time positions, sometimes as a delivery driver, and sometimes as a laborer, where he was occasionally required to lift heavy weights or operate machinery or equipment. (R. at 43-48.) His last employment was as a gas station attendant in 2021. (R. at 43.)

The plaintiff alleges that he became unable to work on or about February 7, 2022, due to his disabling conditions including bipolar depression, anxiety, and low vision. (R. at 57.) He, despite having some short-term jobs at a pizza place or Door Dash, was unable to keep a job for more than a few months. (R. at 20.) Plaintiff argues that he remains unmotivated and has trouble getting out of bed because of his depression. (R. at 222.)

### B. Medical Record

#### 1. Nurse Practitioner Courtney Smith

Plaintiff has a history of mental health issues. (R. at 301-349.) He has regularly been seen by nurse practitioner ("NP") Courtney Smith for mental health medication management. (Id.) Plaintiff's current medication list includes Divalproex Sodium (Depakote), Seroquel, Topiramate and Wellbutrin. (R. at 411.) NP Smith assessed plaintiff numerous times to have "Bipolar II Disorder Moderate, Most Recent Episode Major Depressive." (R. at 383-400,

3

424-455.) Plaintiff's primary care provider, NP Smith completed a mental impairment questionnaire on November 23, 2022. (R. at 411-12.) She noted on the questionnaire that she had treated plaintiff since 2017 and listed primary diagnoses as bipolar depression and anxiety disorder, with his prognosis as unknown/poor. (R. at 411.) She checked the boxes on the form indicating that plaintiff was unable to meet competitive standards for sustained concentration and persistence or understanding and memory. (R. at 412.) She posited that plaintiff would not function in social interaction areas or adapt, and that his impairments would cause him to be absent from work "every day" and to be off task "8 hours" in an 8-hour work day. (Id.)

2. **Nurse Practitioner Rebecca Geyer**

On September 26, 2022, plaintiff was seen and evaluated by NP Rebecca Geyer for a consultative internal medicine examination. (R. at 362-77.) In her one-time evaluation, she noted, among other things, his history of bipolar disorder, and after a physical examination found the plaintiff was limited to light work, never lifting more than 20 pounds, and constrained to sit for three hours at a time or walk for one hour at a time or two hours total. (R. at 366-67.) The prognosis given for plaintiff by NP Geyer was fair, without further comment. (R. at 365.) Her report did note that plaintiff could occasionally (up to 1/3) work around moving mechanical parts, operate a motor vehicle, and work in a moderate noise environment, such as an office. (R. at 370.)

3. **State Agency Medical Consultants**

Plaintiff's medical record file was reviewed by state agency medical consultants for independent disability determination analysis and residual functional capability ("RFC") to work. (R. at 75-89.) An internal medicine physician on November 22, 2022, noted findings about plaintiff's medical conditions. (R. at 77.) Mental health reviewers of the file, psychologist

4

Valorie Lynn Rings, Psy. D., on September 15, 2022, (R. at 78), and psychiatrist Faisal Roberts, Psy. D., on re-review on January 9, 2023, (R. at 87), each determined that while plaintiff was impacted due to bipolar depression and anxiety, he was able to be managed with medication. Each noted the activities of daily living that plaintiff was capable of continuing, with mild limitations and adaptation, and because of the plaintiff's age, education, and RFC, each recommended a finding of "not disabled" because plaintiff can adjust to other work. (R. at 80, 89.)

### C. Administrative Law Judge's Findings

Proceeding through the sequential evaluation process, the ALJ determined that the plaintiff had not engaged in substantial activity since his claimed disability date at step one, (R. at 20); acknowledged the plaintiff had severe impairments of major depressive disorder and generalized anxiety disorder at step two, (R. at 21); and found that the plaintiff's combination of impairments did not meet the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 at step three. (R. at 22.)  Plaintiff exhibited multiple moderate limitations, but none that rose to the level of serious or extreme as required to satisfy the "paragraph B" criteria, and the record of his conditions did not satisfy the "paragraph C" criteria. (R. at 23.)

Prior to commencing step four, the ALJ determined plaintiff's RFC.  The ALJ considered plaintiff's entire medical record, to include the medical opinions and state administrative medical reviewer's reports discussed above, and determined plaintiff's RFC as follows:

> [plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except is capable of occasionally climbing ladders, ropes, or scaffolds, ramps or stairs; must avoid moderate or

>occasional exposure to any hazards such as dangerous moving machinery and unprotected heights; is capable of simple, routine and repetitive tasks in a low stress job defined as having only simple decision making required, occasional changes in the work setting; and capable of occasional interaction with the general public, co-workers and supervisors.

(R. at 23-24.)

At step four, for purposes of assessing prior work, the ALJ utilized the plaintiff's prior work as a warehouse laborer and delivery truck driver. (R. at 48.) During the hearing, the ALJ heard testimony from plaintiff and acknowledged that prior work performed by the plaintiff at the heavy and up to very heavy level would no longer be available given his physical and mental limitations. (R. at 65-67.)

With respect to the findings at step five, the ALJ posited a series of hypothetical questions to the VE to determine whether there was other work plaintiff was capable of performing given his physical and mental limitations. (R. at 67-72.) Utilizing plaintiff's data as a younger individual, with a high school degree, fifteen-year vocational history, and based on his earlier testimony at the hearing, the VE opined plaintiff's prior work was predominantly unskilled. (R. at 63-63.) The VE started with an unskilled equipment cleaner position, based on plaintiff's last available position, taking into account the limitations described in a hypothetical to "simple, routine, and repetitive tasks in a low stress job" with "simple decision making required, [only] occasional changes to work setting, and no more than occasional interaction with the public, coworkers or supervisors." (R. at 65.) The VE reexamined past work and determined the hypothetical individual would only be able to perform the cleaner positions, but at a lower level of lift: at medium work level or below. (R. at 67.) After filtering out positions in the hotel industry to account for not working around the public, the VE testified that there were still a significant number of jobs available in the national economy at the medium level, and even more

6

available at the light exertion level, that the hypothetical individual would be capable of performing. (R. at 68.)  The VE testified that if the hypothetical individual would miss twenty percent of the workweek, there would be no jobs available for that individual. (R. at 69.)  The ALJ concluded at step five that there were "jobs that exist in significant numbers in the national economy that [plaintiff] can perform…." (R. at 28.)  The ALJ concluded that plaintiff was not disabled. (R. at 29.)

IV.   **LEGAL STANDARD OF REVIEW**

Judicial review of the Commissioner's final decision denying a claimant's application for benefits is provided by federal law. 42 U.S.C. § 405(g).  The judicial review of a final decision is plenary with respect to questions of law. Schaudeck v. Comm'r Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).  With respect to factual findings, this court must determine whether there is substantial evidence which supports the findings of the Commissioner.  "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389 (1971)).  The deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla." Burns v. Burhart, 312 F.3d 113, 118 (3d Cir. 2002).  This standard, however, does not permit the court to substitute its own conclusion for that of the fact-finder. Id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless whether the court would have differently decided the factual inquiry).  The Third Circuit Court of Appeals had held that an administrative law judge has a legitimate basis to

discredit a medical opinion when there are inconsistencies and contradictory evidence in the record. See Hubert v. Comm'r of Soc. Sec., 746 F. App'x 151, 153 (3d Cir. 2018).

V.      **DISCUSSION**

   A.      **Sequential Evaluation**

Disability is defined under Title XVI of the SSA as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Similarly, a person is unable to engage in substantial gainful activity when his physical or mental impairment or impairments are of such severity that he is not only unable to do "his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 1382c(a)(3)(B).

The SSA outlines a five-step sequential evaluation that must be applied in order to make a disability determination. 20 C.F.R. § 416.920. That five-step evaluation consists of the following stages: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has severe impairment; (3) if so, whether the claimant's severe impairment meets or equals the criteria of an impairment listed in 20 C.F.R. pt. 404 subpt. P., app. 1; (4) if not, whether the claimant's impairment prevents him from performing his past relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920; see Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000). If a claimant fails to meet the burden of proving the requirements in the first four steps,

the administrative law judge may find that the claimant is not disabled. Burns v. Burnhart, 312 F.3d at 119. If the claimant meets the burden with respect to the first four steps, the Commissioner has the burden to meet the fifth step. Hess v. Comm'r Soc. Sec., 931 F.3d 198, 201 (3d Cir. 2019) ("The burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security."). The ALJ followed the five-step sequential evaluation and, as described above, found plaintiff was not disabled within the meaning of the SSA.

### B.  Alleged Errors

Plaintiff argues that the ALJ's decision was not supported by substantial evidence, was arbitrary and capricious, and was an error of law. Specifically, he argues that the "ALJ improperly rejected the opinion of plaintiff's longtime mental health provider NP Smith by failing to acknowledge evidence that supported the opinion, and by failing to adequately consider the episodic nature of bipolar disorder after failing to consider it an impairment at step two." (Pl.'s Br., ECF. No. 12 at 10.)

#### 1.  Opinion of NP Smith

Plaintiff challenges the ALJ's conclusion that the opinion of NP Smith was "not persuasive." (R. at 27.) For claims filed after March 27, 2017, like the claim in this case, the policy about how to evaluate medical evidence was altered.[1]

> The new rules provide that adjudicators will evaluate all medical opinions and findings using the factors delineated in the new regulations; supportability and consistency are the most important factors and their application must be explained; other factors which "will be considered" and about which

---

1. The prior policy gave treating physicians' opinions controlling weight (the "treating physician rule") where their positions were supported by medical evidence and were not otherwise inconsistent with other substantial evidence in the record. See Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).

9

> adjudicators "may but are not required to explain" are the medical source's: "treatment relationship" with the claimant including length, frequency, purpose and extent of the treating relationship and whether the source has an examining (as opposed to non-examining) relationship with the claimant; and "other factors" such as whether the source has familiarity with other evidence in the claim or understanding of the SSA disability program's policies and evidentiary requirements.

Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability: Law and Procedure in Federal Court 172 (2025 ed., Thomson Reuters, 2025) (quoting 20 C.F.R §§ 404.1520c(b), (c); 416.920c(b), (c), (2017)). In applying the altered policy, a district court commented:

> [I]n March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis…. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." **The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability**," [and a]n ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.

Densberger v. Saul, No. 1:20-CV-772, 2021 WL 1172982 at *7-8 (M.D. Pa. Mar. 29, 2021) (quoting 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c)) (emphasis added).

The ALJ considered and addressed the supportability and consistency of NP Smith's opinion. He explained why the opinion of NP Smith was considered, but "not found to be persuasive." (R. at 27.) The ALJ noted that a) NP Smith did not support her opinion with rationale and clinical findings to coincide with the check marks she made on a questionnaire

10

indicating that plaintiff could not meet competitive standards; b) NP Smith provided subjective complaints, such as "hygiene concerns," which were at odds with the totality of the treatment record and other findings listed by other providers; and c) to differentiate the other providers' findings, NP Smith's significant findings for conditions such as "memory fog" were not consistent with plaintiff's testimony at the hearing where he could remember symptoms and recall events, or his ability to work in a pizza shop, take care of household chores and other daily living activities.

    The ALJ concluded the record supported the ALJ's RFC determination. (R. at 27.) The ALJ determined the assessments from the reviewing medical professionals were more appropriate findings for plaintiff's abilities because they took "longitudinal evidence of [the plaintiff's medical] record." (Id.) As noted, this court needs to consider whether the ALJ's decision is supported by substantial evidence. Here, the ALJ fully evaluated NP Smith's opinion, found her opinion was not supported or consistent and explained why the other medical professional opinions were more persuasive. There is substantial evidence to support the weight given by the ALJ to NP Smith's opinion and she sufficiently explained the reasons for her conclusion.

        **2.**    **Failure to Note Plaintiff's Bipolar Disorder in Step Two**

    The ALJ found plaintiff's depression and anxiety to be severe medical impairments in step two; other additional disorders including obesity, acid reflux, prediabetes, and low vision were also considered, but determined to be non-severe. (R. at 21.) The severity of those impairments' impact on level of functioning on a sustained basis, however, was considered across the totality of plaintiff's medical record. Here, the ALJ found plaintiff had no limitation in remembering or applying information or following instructions. (R. at 22.) Social

11

abnormalities and difficulties in past jobs or with coworkers supported a finding of a moderate limitation in interacting with others. (Id.)  Concentration resulted in a mild deficiency. (R. at 23.)

Plaintiff contends that his bipolar diagnosis should have been listed in step two as a severe medical impairment.  Plaintiff draws a comparison to Balthaser v. Kajakazi, a decision involving a man similarly making a claim for disability benefits and the administrative law judge failed to identify his bipolar diagnosis as a severe impairment in step two. Balthaser v. Kijakazi, No. 20-CV-06181, 2022 WL 2828848 (E.D. Pa. July 20, 2022) (remanding case because administrative law judge did not identify bipolar disorder as a severe impairment in step two and did not consider it elsewhere in the decision).  Plaintiff incorrectly relies on that decision because, while in Balthaser, the court noted that an "ALJ cannot simply ignore pertinent evidence concerning a claimant's impairments," it also acknowledged that "any error in considering Mr. Balthaser's bipolar disorder at step two would be harmless if the ALJ adequately considered it elsewhere in the opinion." (Id. at *5.)  In Capalaces v. Kijakazi, the court reflected:

> [I]t is … well settled that:
>
>> [E]ven if an ALJ erroneously determines at step two that one impairment is not "severe," the ALJ's ultimate decision may still be based on substantial evidence if the ALJ considered the effects of that impairment at steps three through five. However, where it appears that the ALJ's error at step two also influenced the ALJ's RFC analysis, the reviewing court may remand the matter to the Commissioner for further consideration." See Nosse v. Astrue, No. 08–[CV–1173, 2009 WL 2986612, *10] (W.D. Pa. Sept. 17, 2009).
>
> McClease v. Comm. of Soc. Sec., No. 8–CV–1673, 2009 WL 3497775, *10 (E.D. Pa. Oct. 28, 2009); see also Salles v. Comm. of Soc. Sec., 229 Fed. App'x 140, 145, n. 2 (3d Cir. 2007) (citing Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005)) ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her impairments were non-severe,

any error was harmless."). Stouchko v. Comm'r of Soc. Sec., No. 1:12-CV-1318, 2014 WL 888513, at *10 (M.D. Pa. Mar. 6, 2014).

Capalaces v. Kijakazi, No. 3:23-CV-00034, 2024 WL 84205, at *12 (M.D. Pa. Jan. 8, 2024); see Reices-Colon v. Astrue, 523 F. App'x 796 (2d Cir. 2013) (finding harmless an error at step two due to not including certain conditions as severe impairments "[b]ecause these conditions were considered during subsequent steps…"); Mitchell v. Colvin, No. 4:13CV131 CDP, 2014 WL 65386 (E.D. Mo. Jan. 8, 2014) (same).

Other decisions cited by plaintiff are distinguishable from this case. See Jelinek v. Astrue, 662 F.3d 805 (7th Cir. 2011) (decided under prior policy about weight given to medical providers, i.e. "treating physician rule," and that state-agency medical opinions given weight predated the treating physician's opinion by more than two years); Bauer v. Astrue, 532 F.3d 606 (7th Cir. 2008) (decided under prior "treating physician rule"); Kangail v. Barnhart, 454 F.3d 627 (7th Cir. 2006) (dealt with statute that barred benefits if disability was caused by substance abuse and found administrative law judge erred in concluding the statutory prohibition was applicable); Conroy v. Saul, 2020 WL 1286073 (W.D. Pa. Mar. 17, 2020) (decided under prior "treating physician rule" and because the state agency examiner opinions predated some diagnoses, there was an incomplete medical record).

Plaintiff's primary complaint with respect to his bipolar diagnosis was the associated depression, which was classified in step two as a severe medical impairment for disability purposes in the ALJ's decision. (R. at 21.)   Most significantly, the treatment notes of plaintiff's treating medical provider, NP Smith, identify plaintiff's condition as "Bipolar II Disorder Moderate, Most Recent Episode Major Depressive." (R. at 383-400, 424-455.)   The ALJ referred to plaintiff's bipolar disorder several times in her decision. (R. at 22-25.)   The ALJ

13

specifically referred to plaintiff's bipolar symptoms and they were taken into account by the ALJ to accommodate for plaintiff's anxiety in interacting with others and where his concentration may be more limited. (R. at 26.)  Under these circumstances, any error in not including his bipolar diagnosis in step two was harmless.  With the identification of depression and anxiety as severe impairments at step two, the sequential analysis of plaintiff's claim continued to the next step.  Failing to include plaintiff's bipolar diagnosis at step two would, therefore, not necessarily be a fatal error, even if it should have been included, because the ALJ found plaintiff met his burden at step two. Salles, 229 F. App'x at 145 n.2.  The issue is whether the error in not specifically referencing plaintiff's bipolar disorder in step two is harmless.

Here, plaintiff's bipolar disorder was addressed in other steps and was adequately considered. The ALJ specifically noted plaintiff's bipolar disorder in the categories of adapting and managing oneself, as it pertains to relationships with others and possible panic attacks. (R. at 23.)  Because plaintiff had not reported a panic attack, been hospitalized, or, since the reported disability claim date, sought out other mental health treatment, and, in fact, refused the treatment recommended by his provider, the ALJ determined the evidence supported a finding of no more than moderate limitation. (Id.)  Here, the error at step two was harmless.

VI.   CONCLUSION

The ALJ explained why NP Smith's opinion was not persuasive and determined that plaintiff had the capacity to conduct limited work activity as defined in the RFC, despite the severe disabilities identified in step two, and more robustly discussed with insight to plaintiff's bipolar disorder in the body of the ALJ's decision.

Having considered the parties' motions, the record as a whole and the applicable law, the court finds there is substantial evidence in the record to affirm the ALJ's decision. The court will grant defendant's motion for summary judgment (ECF No. 14) and deny plaintiff's motion for summary judgment (ECF No. 11).

An appropriate order and judgment will be entered.

Dated: July 8, 2025

BY THE COURT:

_____
Joy Flowers Conti
Senior United States District Judge